Lafonte MORGAN, Defendant Below, Appellant,

v.

STATE of Delaware, Plaintiff Below, Appellee.

No. 293, 2008.

Supreme Court of Delaware.

Submitted: Nov. 5, 2008.
Decided: Nov. 20, 2008.

**11.** *Id.*

Thomas D. Donovan, Esquire, Dover, DE, for appellant.

John Williams, Esquire, Department of Justice, Dover, DE, for appellee.

Before STEELE, Chief Justice, HOLLAND and JACOBS, Justices.

HOLLAND, Justice:

The defendant-appellant, Lafonte Morgan ("Morgan"), appeals from multiple final judgments of conviction in the Superior Court. A jury found Morgan guilty of Trafficking Cocaine, Trafficking Ecstasy, Possession with Intent to Deliver a Narcotic, Maintaining a Dwelling for Keeping Controlled Substances, Maintaining a Vehicle for Keeping Controlled Substances, two counts of Conspiracy in the Second Degree, and Endangering the Welfare of a Child. On appeal, Morgan claims that: first, the warrant to search Morgan's home was not supported by probable cause; and second, the trial judge erred in failing *sua sponte* to give a curative instruction regarding testimony about forfeiture forms signed by Morgan after he had invoked his right to remain silent.[1] This Court has concluded that sufficient probable cause existed to support the search of Morgan's home and that the lack of a curative instruction was not plain error. Therefore, the judgments of the Superior Court must be affirmed.

### Facts

The Dover Police Department began an investigation into possible drug dealing in the Dover East Mobile Home Park ("Dover East") on July 11, 2007. Officer DiGirolomo ("DiGirolomo") of the Dover Police received a call from a confidential informant ("CI 365") stating that a black male nicknamed "VA" was selling drugs from his mobile home in Dover East, and that VA would soon be selling drugs near the mailboxes in Dover East. CI 365 stated that "VA" drove an older model maroon Toyota Camry with a Virginia registration. The Dover Police canvassed Dover East and located the vehicle in front of Morgan's residence, 252 Cameo Court in Dover East. However, the predicted drug sale near the mailboxes never occurred.

Later, CI 365 contacted DiGirolomo again and told him that "VA" would leave

---

1. Although the Appellant briefly suggests an issue of whether a reasonable and articulable suspicion existed to pull over his vehicle initially, he does not raise this argument as grounds for his appeal. Because this argument is not briefed, it is waived. *See Somerville v. State*, 703 A.2d 629, 631 (Del.1997).

his home within a minute and head to the local Safeway to sell approximately 70 ecstasy pills. Approximately two minutes later, DiGirolomo observed an older maroon Camry with Virginia plates leave Dover East. As DiGirolomo attempted to signal the driver to pull the car over as it turned onto the access road to the Safeway. While doing so, DiGirolomo observed two people in the car moving around. The car did not pull over for several hundred yards, even though nothing prevented the driver from pulling over immediately. DiGirolomo testified that in his experience, this behavior was consistent with an attempt to hide contraband.

Morgan's girlfriend, Carissa Pharr ("Pharr"), was driving the car and Morgan was in the passenger seat. After stopping the car, Pharr appeared nervous, and Pharr and Morgan gave inconsistent stories as to their destination. When Pharr opened the glove box of the car to produce the vehicle's registration, a digital scale—often used to weigh drugs for sale—fell out. DiGirolomo asked Pharr and Morgan to step out of the car and searched it, finding a small amount of crack cocaine on the front passenger seat. DiGirolomo did not locate any ecstasy pills.

After the vehicle stop, Dover police detectives applied for a warrant to search Pharr's and Morgan's home at 252 Cameo Court in Dover East. The affidavit narrated the above events at length, and described CI 365 as having in the past given information that had "proven to be accurate." A search warrant was issued and executed, and Dover police found, among other items, 7.6 grams of powder cocaine, 1.7 grams of crack cocaine, 8 ecstasy pills, a digital scale, and several hundred dollars.

After the search of their home, Pharr and Morgan were taken to the hospital to determine whether they had ingested any ecstasy pills. An x-ray indicated that Pharr had concealed the pills in her vagina. A nurse removed a bag from Pharr's vagina containing multiple ecstasy pills.

Morgan filed a pre-trial motion to suppress the evidence obtained during the search of his home. Morgan argued that based on the affidavit submitted in support of the search warrant, the police did not have probable cause to search Morgan's home. The trial judge denied the motion, finding that there was probable cause for the warrant and a sufficient nexus between the police's information and Morgan's home.

At trial, the State questioned Detective Pires ("Pires") about forfeiture forms signed by Morgan. Pires testified that forfeiture forms are presented to suspects in drug cases to give them the opportunity to claim any of the seized property, and that by signing the forms, Morgan had claimed ownership of the money seized from his person and his home. Morgan signed the forms after he had invoked his right to remain silent. The prosecution attempted to introduce the forfeiture forms into evidence, but the trial judge sustained Morgan's objection. Morgan never requested, and the trial judge never gave, any curative instructions to the jury regarding Pires's testimony.

### Morgan's Probable Cause Challenge

Morgan argues that there was no probable cause to support the search warrant and his subsequent arrest for four reasons. First, CI 365 was not past proven reliable. Second, the police officers did not attempt to corroborate CI 365's information. Third, the officers' affidavit and application for the search warrant to the Justice of the Peace Court omitted information that should have been considered by that court in determining whether to issue a search warrant. Fourth, under the totality of the

circumstances there was not a sufficient nexus between Morgan's home and the evidence sought.

### Standard of Review

■ We review the denial of a motion to suppress evidence for an abuse of discretion.[2] "To the extent [Morgan's] claims of error implicate questions of law, however, this Court will exercise *de novo* review."[3] In this case, the record reflects that the trial court did not err in denying Morgan's motion to suppress.

■ The United States and Delaware Constitutions require that a court issue a search warrant only on a showing of probable cause.[4] The four-corners of an affidavit supporting a search warrant must set forth adequate facts for a magistrate to " 'form a reasonable belief that an offense has been committed and the property to be seized will be found in a particular place.' "[5] To determine whether probable cause exists, the magistrate must apply a "totality of the circumstances" test.[6] That test requires the consideration of multiple factors, including: (1) "the reliability of the informant," (2) "the details contained in the informant's tip," and (3) "the degree to which the tip is corroborated by independent police surveillance and information."[7] This examination is necessary to " 'ensure that the magistrate ha[s] a substantial basis for concluding that probable cause exist[s].' "[8]

### CI 365's Reliability

■ Although Morgan claims that the confidential informant was not past proven reliable, the affidavit stated that the informant "provided information in the past that has been proven to be accurate." Additionally, CI 365 accurately predicted Morgan's movements. CI 365 told the police that "VA" would be heading to the Safeway in a maroon, older model Camry with a Virginia registration to participate in a drug transaction. The officers saw this car leave Dover East and turn onto the access road leading to the Safeway. This is the type of predictive information that may indicate an informant's reliability.[9] Under the totality of the circumstances, the affidavit's recitation that CI 365 had given reliable information in the past, and also of the predictive information supplied by CI 365, supports the determination that CI 365's tip provided sufficient probable cause for a magistrate judge to issue a warrant.

### CI 365's Tip Was Corroborated

Morgan's claim that the police did not attempt to corroborate CI 365's tip is not supported by the record. CI 365 specifically told the officers that "VA" would be leaving his residence, described the vehicle "VA" would be driving, and stated that "VA" was headed to the Safeway to sell drugs. The affidavit detailed how the offi-

---

**2.** *Norcross v. State*, 816 A.2d 757, 762 (Del. 2003) (citing *Virdin v. State*, 780 A.2d 1024, 1030 (Del.2001)).

**3.** *McAllister v. State*, 807 A.2d 1119, 1123 (Del.2002) (quoting *Downs v. State*, 570 A.2d 1142, 1144 (Del.1990)).

**4.** *LeGrande v. State*, 947 A.2d 1103, 1107 (Del. 2008).

**5.** *Id.* (quoting *Sisson v. State*, 903 A.2d 288, 296 (Del.2006)).

**6.** *Id.* at 1107–08.

**7.** *Id.* at 1108 (citing *Brown v. State*, 897 A.2d 748, 751 (Del.2006)).

**8.** *See id.* quoting *Sisson v. State*, 903 A.2d at 296.

**9.** *See, e.g., LeGrande v. State*, 947 A.2d at 1109–10.

cers had watched Morgan leave his home, in the described vehicle, and drive to the predicted location. When the officers pulled Morgan over, they corroborated CI 365's claims of "VA"'s drug dealing activities when they found a digital scale and crack cocaine in the car.

### *The Information Omitted Was Irrelevant*

■ Morgan next claims that the officers omitted information in the affidavit that should have been considered by the Justice of the Peace. Morgan argues that the affidavit should have explained that CI 365 initially told the officers there would be a drug sale near the mailboxes and that the sale never occurred. This transaction was not the basis for requesting the search warrant and, therefore, was irrelevant. As the trial judge stated, the mailbox transaction "was what put the police on the matter to begin with" but was "not ... the basis of the search warrant."

### *The Home Search Was Proper*

■ Finally, Morgan claims that there was not a sufficient nexus between the home to be searched and the evidence sought. For probable cause to exist, "a nexus between the items to be sought and the place to be searched" must be established.[10]

> The nexus between the objects to be seized and the premises searched need not, and often will not, rest on direct observation, but rather "can be inferred from the type of crime, the nature of the items sought, the extent of an opportuni-

ty for concealment and normal inferences as to where a criminal would hide [evidence of a crime]...."[11]

Police officers observed the car described by CI 365 as belonging to "VC" outside of 252 Cameo Court. CI 365 told police that "VC" was possibly selling ecstasy from his home in Dover East, and that Morgan was leaving that residence and going to the Safeway to sell ecstasy. The officers did not find the ecstasy in the car, which they pulled over on the Safeway's access road, but they did find crack cocaine and a digital scale. It, therefore, was logical for them to infer that the ecstasy pills might be in Morgan's mobile home. Pharr identified 252 Cameo Court as her and Morgan's residence. The officers stated in the affidavit that in their experience, drug traffickers commonly conceal drugs and contraband in their homes. These facts establish a nexus between the contraband sought and the premises searched—Morgan's home at 252 Cameo Court. Accordingly, we hold that the totality of the circumstances set forth in the affidavit supports the magistrate's determination that probable cause existed for the issuance of a search warrant.

### *Sua Sponte Instruction Unnecessary*

■ When Morgan was arrested on July 11, 2007, the Dover Police seized $235 from his person. When the police executed a search warrant at the residence Morgan shared with Pharr on the evening of July 11, the authorities seized additional cash totaling $616 from the bedroom of the home. Near the end of the first day of

---

10. *Hooks v. State,* 416 A.2d 189, 203 (Del. 1980) (citing *United States v. Maestas,* 546 F.2d 1177, 1180 (5th Cir.1977); *United States v. Rahn,* 511 F.2d 290, 293 (10th Cir.1975)).

11. *United States v. Feliz,* 182 F.3d 82, 88 (1st Cir.1999) (quoting *United States v. Charest,* 602 F.2d 1015, 1017 (1st Cir.1979)); *accord*

*Hooks v. State,* 416 A.2d at 203 ("The question is whether one would normally expect to find those items at that place. If so, then that inference will suffice to allow the valid issuance of a search warrant for that place." (citations omitted)).

Morgan's Superior Court jury trial, the prosecutor asked the chief investigating officer, Pires of the Dover Police Department, if he had completed "any paperwork with the defendant" concerning the $235 the police seized from Morgan's person. Pires responded:

Anytime you seize money of anybody's in a drug-related case, we have a notification of forfeiture form that we have them sign indicating that this money was taken from you or whatever it may be—it could be money or a vehicle—but that it was taken from you. And the person has the opportunity to claim they are or are not the owner of the property.

Pires explained that there were police forfeiture forms for both the $235 seized from Morgan's person and the "money that was seized from the residence." Pires testified that Morgan signed the forfeiture forms and claimed ownership of the money. Pires also testified that the denominations of cash seized in the investigation were "consistent with drug dealing. If you notice, there's a lot of $20 amounts in there which, commonly, crack cocaine is sold in $20 increments." Referring to photographs of the money seized in this case, Pires added: "It's very common for drug dealers to [have] large quantities of cash on hand just to keep the business going."

When trial resumed the following morning of the second day of trial, Pires continued his direct examination testimony about two property forfeiture forms that he had "filled out with the defendant." At this point, defense counsel objected to admission into evidence of the police property forfeiture forms because the accused had invoked his "Miranda rights and refused to give a statement" prior to signing the forfeiture forms. The trial judge sustained the defense objection. There was no further defense trial application concerning this subject.

Morgan argues for the first time on this direct appeal that the trial judge should *sua sponte* have given some type of "curative instruction." Since Morgan made no request at trial for a "curative instruction," this claim has been waived and may now only be reviewed on appeal for plain error.[12] To constitute plain error, the error must affect substantial rights, generally meaning that it must have affected the outcome of the trial.[13] In demonstrating that a waived error is prejudicial, the burden of persuasion is on the defendant.[14]

Given the other substantial trial evidence of Morgan's guilt, the fact that the jury also heard that Morgan had signed two forfeiture forms, claiming ownership of the $235 seized from his person and the $616 cash found in his joint residence, did not reasonably affect the outcome of the trial. The record reflects that police found a digital scale and a piece of crack cocaine in the vehicle where Morgan was riding as a passenger, as well as another scale, drug sale paraphernalia, and numerous contraband drugs in the bedroom Morgan shared

12. Del.Supr. Ct. R. 8; D.R.E. 103(d).

13. *United States v. Olano*, 507 U.S. 725, 732–34, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993); *Floray v. State*, 720 A.2d 1132, 1137 (Del. 1998); *Wainwright v. State*, 504 A.2d 1096, 1100 (Del.1986), *cert. denied*, 479 U.S. 869, 107 S.Ct. 236, 93 L.Ed.2d 161 (1986) ("Under the plain error standard of review, the error complained of must be so clearly prejudicial to substantial rights as to jeopardize the fair-

ness and integrity of the trial process." (citing *Dutton v. State*, 452 A.2d 127, 146 (1982))).

14. *See Brown v. State*, 729 A.2d 259, 265 (Del.1999); *Stevenson v. State*, 709 A.2d 619, 633 (Del.1998) (quoting *Sullivan v. State*, 636 A.2d 931, 942 (Del.1994)); *see also United States v. Olano*, 507 U.S. at 732–34, 113 S.Ct. 1770 (federal plain error rule).

with Pharr. Pharr told police that Morgan had been selling drugs for five or six months. In her trial testimony, Pharr denied that the digital scale, drug sale paraphernalia, or the ecstasy, cocaine or heroin found by police in her home belonged to her. This other independent trial evidence of Morgan's guilt was sufficient to convict him regardless of whether the jury heard that Morgan had signed two forfeiture forms asserting ownership of cash seized by the police.

Since defense counsel did not request any curative jury instruction after making an evidentiary objection, the trial judge was not required to second guess that defense strategy. Under these circumstances, the record reflects that the trial judge acted appropriately, and Morgan can demonstrate no plain error. Accordingly, we hold that Morgan has not sustained his burden of persuasion in demonstrating plain error because the trial judge did not *sua sponte* give a jury "curative instruction" after sustaining the defense objection to the admission of two police property forfeiture forms.

### *Conclusion*

The judgments of the Superior Court are affirmed.