# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
# IN AND FOR NEW CASTLE COUNTY

STATE OF DELAWARE,    )
          )
      v.       )      ID. No. 1501006974
          )
SABRI CAULK,      )
          )
    Defendant.    )

## ORDER

On this 14th day of September, 2015, **IT IS ORDERED** as follows:

Defendant's Motion to Suppress is **DENIED**.


Danielle J. Brennan, Esq., Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware. Attorney for State of Delaware.


T. Andrew Rosen, Esq., Assistant Public Defender, Public Defender's Office, Wilmington, Delaware. Attorney for Defendant.


**Scott, J.**

1

## Introduction

Before the Court is Defendant Sabri Caulk's ("Defendant") Motion to Suppress, brought by counsel. Defendant argues that the probation officers did not have reasonable grounds to conduct the administrative search of his vehicle. Defendant also the evidence found from the administrative search of his home, conducted as a result of the invalid administrative search of his vehicle, must be suppressed as fruit of the poisonous tree. The Court has reviewed the parties' submissions and held a suppression hearing. For the following reasons, the Defendant's Motion to Suppress is **DENIED.**

## Findings of Fact

On January 13, 2015, Sabri Caulk ("Defendant"), and a fellow probationer, Daimere Jones ("Jones"), were seen by a LabCorp employee parking a maroon Chrysler sedan in the LabCorp parking lot, nearby to Probation & Parole at 314 Cherry Lane in New Castle, Delaware. The LabCorp employee alerted Probation & Parole Officer Erica Johnson that he or she observed two black males park the vehicle in the LabCorp parking lot and then walk toward Probation & Parole at Cherry Lane. P.O. Johnson independently verified that the Chrysler was parked in the LabCorp parking lot and ran its registration. She discovered that the vehicle was registered to Defendant's mother, Michelle L. Caulk, at 700 North Monroe Street in Wilmington, Delaware. P.O. Johnson relayed the information received

2

from the LabCorp employee, as well as the Chrysler's registration information, to Probation Officer John Savage at Probation & Parole.

P.O. Savage is the probation officer with whom Defendant and Jones had appointments on January 13. He checked Probation & Parole intake for that day in order to independently verify this information, which showed that Defendant and Jones were the only two black males who had checked in to Probation & Parole around the time of the informant's observation that day. P.O. Savage also knew that Defendant and Jones were neighbors,[1] they often reported to probation appointments together and that pursuant to their probation, neither Defendant nor Jones had a valid driver's license. Furthermore, P.O. Savage knew that Defendant and Jones both had positive urine screens for opiates at their probation appointments one week prior.[2]

Based on all of this information, P.O. Savage briefly questioned Defendant and Jones separately as to how they got to Probation & Parole that day. He questioned Defendant first, who initially claim to have gotten a ride. P.O. Savage testified that during this brief questioning, Defendant was evasive and appeared nervous, as evidenced by his stuttering and fidgeting. In light of Defendant's

---

[1] Defendant's address of record with Probation & Parole is 700 North Monroe Street in Wilmington, Delaware. Jones' address of record with Probation & Parole is 702 North Monroe Street in Wilmington, Delaware.

[2] P.O. Savage testified that Defendant had previous violations of probation for positive urine screens, in addition to the positive urine screen from the week prior to Defendant's January 13, 2015 probation appointment. He could not recall how many of Defendant's previous violations of probation were for positive urine screens, but indicated that information would be in Defendant's certified records of his violations of probation.

3

responses, P.O. Savage contacted Duty Supervisor Glen and relayed this information, including Defendant's positive urine screen for opiates the previous week. Supervisor Glen authorized an administrative search of the Chrysler, but also instructed P.O. Savage to further question Defendant and Jones.

Prior to conducting the administrative search of the Chrysler, P.O. Savage questioned Jones and briefly questioned Defendant again. Jones was also initially evasive, claiming to have taken the bus to Probation & Parole that day. However, Jones admitted to getting a ride from Defendant when confronted with the fact that Probation & Parole cameras, which capture the bus stop right outside, would have shown that. Similarly, Defendant also admitted to having driven in that day when confronted with the contradictory information from the informant. P.O. Savage also questioned Defendant as to his positive urine screen the week before. Defendant admitted that he had taken oxycodone, which he had bought on the street.

Pursuant to a security pat down of Defendant, P.O. Savage found the ignition key to a vehicle, which Defendant admitted was the Chrysler in the LabCorp parking lot. Moreover, prior to conducting the administrative search of the Chrysler, P.O. Savage confirmed that the key found on Defendant's person was the ignition key for the Chrysler by using it to unlock the vehicle. P.O. Savage testified that based on Defendant's evasive behavior and Defendant's positive urine screen for opiates one week prior, he expected to find drugs in the Chrysler.

4

An administrative search of the Chrysler was conducted based on all of this information.

The administrative search of the Chrysler yielded an empty firearm holster from the back pocket of the driver's seat. It was determined by Supervisor Willoughby that the holster had the indentation of a gun barrel on the inside. Based on the administrative search of the Chrysler vehicle, the probation officers then obtained approval for an administrative search of Defendant's residence. An assortment of drugs and weapons were discovered during the administrative search of Defendant's bedroom and the basement of his residence.

As a result of these administrative searches, a New Castle grand jury indicted Defendant on one count of Drug Dealing and one count of Possession of a Firearm by a Person Prohibited.

Defendant filed this motion to suppress on June 1, 2015. A suppression hearing was held on August 7, 2015.

**Parties Contentions**

Defendant seeks to suppress the firearm holster found during the administrative search of the vehicle violated his rights under the Fourth and Fourteenth Amendments of the United States Constitution, and under Article I Section 6 of the Delaware Constitution, because there was not sufficient reasonable suspicion for approval of the administrative search. Defendant argues that the information from the informant is not reliable, and that there were no facts to

5

provide the probation officers reasonable grounds to believe that Defendant possessed contraband or that he had violated his probation. Furthermore, Defendant seeks to suppress all evidence found as a result of the administrative search of his residence, on the grounds that it is fruit of the poisonous tree because it was found subsequent to the illegal administrative search of the vehicle.

The State argues that the administrative search of the vehicle was valid because the probation officers had sufficient reason to believe that Defendant possessed contraband or had violated his probation, based on the following considerations: P.O. Savage's knowledge of the positive urine screens for Defendant and Jones; that Defendant and Jones reside next door to each other and that they were both evasive and untruthful about driving to Probation & Parole together that day; and that neither Defendant nor Jones had a valid driver's license. Based on these considerations and P.O. Savage's training and experience, the State asserts that P.O. Savage suspected Defendant of more than just wanting to avoid a charge of driving without a license. The State also argues that the information received from the informant is reliable because P.O. Savage testified that the informant is an employee of LabCorp, who is past proven reliable, is unpaid, and has no motivations behind the tip.

## Discussion

The Fourth Amendment to the United States Constitution and Article I, Section 6 of the Delaware Constitution protect citizens against unreasonable search

6

and seizure. "Searches and seizures are *per se* unreasonable, in the absence of exigent circumstances, unless authorized by a warrant supported by probable cause."[3] Although a probationer is protected by the Fourth Amendment's reasonableness requirement, the United States Supreme Court has recognized that "[a] State's operation of a probation system [...],presents "special needs" beyond normal law enforcement that may justify departures from the usual warrant and probable-cause requirements."[4] For purposes of protection under the Fourth Amendment, the Supreme Court has consistently treated automobiles differently than private residences, finding that individuals have a lower expectation of privacy in their vehicle than in their home.[5]

In Delaware, probation and parole officers have the authority to conduct searches so long as the search is reasonable and performed in accordance with Department of Corrections procedures.[6] In the absence of exigent circumstances, Probation and Parole Procedure 7.19 requires a probation officer and his or her supervisor to first have a case conference and to evaluate certain factors on a Search Checklist to determine whether to conduct an administrative search.[7] Based on the checklist, the probation officer must obtain supervisor approval and

---

[3] *Scott v. State*, 672 A.2d 550, 552 (Del. 1996) (citing *Hanna v. State,* 591 A.2d 158, 162 (Del. 1991)).
[4] *Griffin v. Wisconsin*, 483 U.S. 868, 873-74 (1987).
[5] *Rakas v. Illinois*, 439 U.S. 128 (1978).
[6] 11 *Del. C.* § 4321(d).
[7]*Sierra v. State*, 958 A.2d 825, 829 (Del. 2008) (quoting DOC Probation and Parole Procedure 7.19).

have sufficient reason to believe or information from a reliable informant, which has been corroborated, that an offender possess contraband, is violating the law or a condition of probation or parole.[8] Sufficient reason or "reasonable suspicion" exists where the 'totality of the circumstances' indicates that the officer had a 'particularized and objective basis' for suspecting legal wrongdoing"[9] However, the Delaware Supreme Court has consistently held that so long as the probation officers substantially comply with DOC regulations and have reasonable suspicion to search a probationer's dwelling, the search will be valid.[10]

The scope of an administrative search should be limited to the areas of the residence that are actually occupied by the probationer, including common areas, and the probationer's property.[11] This scope also extends to areas which the officer has reason to believe is owned, possessed, or controlled by the probationer, even if it later turns out that the area or item searched was in exclusive possession of a non-probationer.[12]

The totality of the circumstances analysis is used to determine whether the information provided by an informant creates reasonable suspicion of

---

[8] *Id.*
[9] *Jacklin v. State*, 16 A.3d 938 (Del. 2011).
[10] *See Pendleton v. State*, 2010 WL 625826 (Del. Feb. 23, 2010); *Sierra*, 958 A.2d at 828; *Pendleton v. State*, 990 A.2d 417, 420 (Del. 2010).
[11] *State v. Redden*, 2003 WL 22853419, *3 (Del. Super. Oct. 22, 2003).
[12] *State v. Tucker*, 2007 WL 1065134, *3 (Del. Super. Apr. 10, 2007).

wrongdoing.[13]   With regard to the reliability of an informant's tip, the U.S. Supreme Court has stated that "if a tip has a relatively low degree of reliability, more information will be required to establish the requisite quantum of suspicion than would be required if the tip were more reliable."[14]   Based on Procedure 7.19's express requirements, the Delaware Supreme Court follows a four-part analysis to determine reliability: "[1] the information detailed, [2] consistent, [3] was the informant reliable in the past, and [4] consider the reason why the informant is supplying the information."[15]   If an informant merely gives information containing "readily observable facts" that evidence no personal knowledge of any illegal activity, such information will not be considered sufficiently reliable.[16]   However, if the police are able to corroborate significant aspects[17] of information regarding details of a defendant's future actions, which are "ordinarily not easily predicted,"[18] then that tip will be considered to have "sufficient indicia of reliability."[19]

---

[13] *Sierra,* 958 A.2d at 829.

[14] *LeGrande v. State*, 947 A.2d 1103, 1109 (Del. 2008) (internal quotations omitted).

[15] *Culver v. State,* 956 A.2d 5, 11 (Del. 2008).

[16] *Id.* at 12; *Sierra,* 958 A.2d at 831 (A probation officer received information from a Department of Justice employee who had received information from a confidential informant that the defendant had drugs in his residence. The Court noted that there was no information in the record showing credibility, reliability, or the basis of the informant's knowledge, and that the information had not been corroborated. The Court also found that the information provided by the informant was based only on observable information and did not show actual knowledge of illegal activity.).

[17] *Alabama v. White* 496 U.S. 325, 331-32 (1990).

[18] *Id.* at 332.

[19] *Id.*; *State v. Holden*, 60 A.3d 1110, 1116 (Del. 2013); *Morgan v. State,* 962 A.2d 248, 252-53 (Del. 2008) (A past-proven reliable informant first told the police that a defendant would be

The decision in *Fuller v. State* is more directly applicable to this case, as it addresses the reliability of tips concerning a probationer's violation of probation. In *Fuller*, the Delaware Supreme Court found that a tip from a past proven reliable informant informing police that a "probationer of a certain description was selling drugs in a particular area and driving a vehicle of a certain description" provided reasonable grounds to believe the probationer was violating his probation and to justify an administrative search of a vehicle.[20] The Court found that the tip was corroborated when the officer located the vehicle in the same general area described, saw that the driver matched the description, and confirmed that the car was registered.[21]

The Court finds similarity to *Fuller* in this case in that P.O. Savage independently corroborated the information from the LabCorp employee. However, based on the available facts in this case overall, the information provided by the informant was all "readily observable facts" that did not evidence personal

---

selling drugs near the mailboxes in his neighborhood. The police did not observe any transaction near the mailboxes. However, when the informant told police that the defendant would be going to a grocery store, in a certain vehicle, to participate in a drug transaction, the officers saw the car leave his neighborhood and head in the direction of the grocery store); *Fuller v. State*, 844 A.2d 290 (Del. 2004); *Compare Florida v. J.S.,* 529 U.S 266, 270-72 (2000) (anonymous informant's tip that a juvenile matching a particular description and wearing a certain type of shirt was carrying a firearm while at a bus stop did not contain predictive information or show that the informant had knowledge of the criminal activity).

[20] *Fuller*, 844 A.2d at 292.
[21] *Id.* at 292-93.

knowledge of any illegal activity.[22]  Therefore, even though the Court finds the informant in this case is past-proven reliable, the information provided to the officers in this instance is not sufficiently reliable under *Culver*.

Regardless of tip's reliability, the administrative search of the vehicle is valid because the officers independently corroborated the informant's tip.  More importantly though, P.O. Savage had other information, unrelated to the informant's tip, that was sufficient to give him reasonable grounds to believe that Defendant had violated his probation and possessed contraband in the vehicle.

When the administrative search of the vehicle was approved, P.O. Savage knew that: (1) the maroon Chrysler that is registered to Defendant's mother and to Defendant's address of record was parked in the LabCorp parking lot nearby to Probation & Parole; (2) two black males were seen parking that vehicle and then walking toward Probation & Parole that day; (3) Defendant and Jones were the only two black males to check in to Probation & Parole around the same time the Chrysler was observed parking in the LabCorp parking lot; (4) Defendant and Jones are neighbors and frequently reported to their probation appointments together; (5) Defendant did not have a valid driver's license; (6) Defendant was evasive and nervous when asked about how he got to his appointment that day; and

---

[22] The informant's tip included the description of the vehicle as a "maroon Chrysler sedan," and indicated that the informant observed two black males park the vehicle in the LabCorp parking lot and walk toward Probation & Parole.

(7) Defendant had a positive urine screen for opiates the at his probation appointment the previous week. Collectively, this information provided P.O. Savage reasonable suspicion that Defendant had driven to Probation & Parole on January 13, 2015, in violation of his probation.

Prior to conducting the administrative search of the vehicle, P.O. Savage obtained additional information sufficient to establish reasonable suspicion that Defendant had driven to Probation & Parole that day in violation of his probation, and that Defendant possessed contraband in the vehicle. Defendant and Jones separately admitted that Defendant had driven to Probation & Parole that day. The ignition key to the vehicle was also found on Defendant's person, and Defendant confirmed that the key belonged to the Chrysler parked in the LabCorp parking lot. Finally, Defendant admitted to P.O. Savage that his positive urine screen for opiates the previous week was a result of him taking oxycodone that he had bought off the street. Moreover, P.O. Savage testified that, based on this information and Defendant's evasive and nervous behavior, he expected to find drugs in the vehicle.

Furthermore, the vehicle was properly within the scope of an administrative search because the officers reasonably believed that Defendant exercised control over the vehicle based on the information available to them at the time the administrative search was authorized. The scope of the administrative search

12

extends to areas that probation officers have reason to believe is controlled by the probationer.[23] The officers had reason to believe Defendant exercised control over the vehicle, even though the vehicle was registered to Defendant's mother, because Defendant had possession of the vehicle's ignition key on his person and he admitted to driving the vehicle to Probation & Parole that day, before the officers conducted the administrative search of the vehicle.

Based on all of the information known to P.O. Savage prior to conducting the administrative search of the vehicle, the probation officers had sufficient reasonable grounds to believe that Defendant had violated his probation by driven to Probation & Parole that day, and possessed contraband in the vehicle. Furthermore, the search was reasonable because the officers substantially complied with Procedure 7.19. Accordingly, Defendant's motion to suppress the evidence found as a result of the administrative search of the vehicle is denied.

Discovery of the firearm holster in the vehicle provided additional reasonable suspicion for approval of the administrative search of Defendant's residence. Since the administrative search of the vehicle is valid, the administrative search of Defendant's residence is also valid. Accordingly, Defendant's motion to suppress the evidence found as a result of the administrative search of his home is denied.

---

[23] *Tucker*, 2007 WL 1065134 at *3.

## Conclusion

For these reasons, Defendant's Motion to Suppress is **DENIED.**

**IT IS SO ORDERED.**

*/s/Calvin L. Scott*
**Judge Calvin L. Scott, Jr.**