IN THE SUPREME COURT OF THE STATE OF DELAWARE

MICHAEL E. HASTINGS,    §
   §
     Defendant Below,    §
     Appellant,    §    No. 93, 2022
   §
     v.    §    Court Below: Superior Court
   §    of the State of Delaware
STATE OF DELAWARE    §
   §    Cr. ID No. 2010000511(N)
     Plaintiff Below,    §
     Appellee.    §

Submitted: November 2, 2022
Decided:    January 10, 2023

Before **SEITZ**, Chief Justice; **VALIHURA** and **VAUGHN**, Justices.

Upon appeal from the Superior Court. **AFFIRMED**.

Zachary A. George, Esquire, Hudson Jones Jaywork & Fisher, Dover, Delaware, *for Defendant Below, Appellant Michael Hastings*.

David C. Skoranski, Esquire (*argued*), and Nicole M. Mozee, Esquire, Delaware Department of Justice, Wilmington, Delaware, *for Plaintiff Below, Appellee State of Delaware*.

**SEITZ**, Chief Justice:

At a political rally for a Delaware U.S. Senate candidate, video and photographic evidence captured Michael Hastings unholstering his handgun and pointing the ready-to-fire weapon at protesters across the street from the rally. He also left the handgun unattended on the ground. The State charged Hastings with one count of Reckless Endangering in the First Degree and one count of Possession of a Firearm During the Commission of a Felony. A Superior Court jury convicted Hastings of both counts. The judge sentenced Hastings to four years at Level V incarceration followed by decreasing levels of supervision.

Hastings raises three arguments on appeal: for the reckless endangering charge, the trial court incorrectly instructed the jury on what a "substantial risk" of death is; the evidence was insufficient to support a reckless endangering conviction; and the cumulative effect of these errors requires both convictions to be vacated.

After our careful review of the record, we affirm the convictions. At trial, Hastings did not object to the jury instructions, meaning he must demonstrate plain error. Even though the court's "substantial risk" instruction mixed the elements of a reckless endangering charge with an aggravated menacing charge, plain error does not exist because the erroneous instruction was not clearly prejudicial to Hastings' defense. Further, after our review of the photographic and video evidence shown to the jury, a rational jury could find that pointing a ready-to-fire weapon at a crowd of

2

agitated protesters and leaving the handgun unattended on the ground created a substantial risk of death.

## I.

## A.

When considering the facts on appeal, we view the evidence in a light most favorable to the State.[1] On September 24, 2020, Michael Hastings attended a political rally in New Castle County in support of a Delaware U.S. Senate candidate. The events were captured by photographs and videos. A group of eight to twelve protesters were located across the street from Hastings and other supporters.[2] The two sides jeered and yelled at each other.[3] Hastings was open carrying a handgun on his belt. The gun was loaded and did not need to be "racked" or cocked to fire.[4]

Hastings unholstered his gun four times. First, he took the gun out, handed it to a person he was talking to, and the person handed it back.[5] Hastings took the gun out a second time while talking to the same person and briefly pointed it at the ground.[6] Right afterward, he unholstered the gun again, this time extending his right arm, pointing the gun where the protesters were gathered, and re-holstered it.[7] Three

---

[1] *Lowther v. State*, 104 A.3d 840, 843 (Del. 2014).
[2] App. to Am. Opening Br. at A123, A143, A164–65.
[3] *Id.* at A132, A147, A157, A167.
[4] *Id.* at A217–18; State's Trial Ex. 5 (Audio Recording of Hastings' Statements).
[5] *Id.* at A212.
[6] *Id.* at A213.
[7] *Id.*

3

protesters testified at trial that Hastings pointed the gun at them for a couple of seconds.[8] They also testified that they felt worried and alarmed by his actions.[9] They reported Hastings' conduct to police officers at the event.[10] The fourth time Hastings unholstered the gun, he left it on the ground and walked toward the protesters to confront them.[11] Another person nearby picked up the gun and handed it back to Hastings when he walked away from the protestors.[12]

### B.

The State charged Hastings with one count of Reckless Endangering in the First Degree and one count of Possession of a Firearm During the Commission of a Felony. Under Delaware law, a reckless endangering charge has two elements – the defendant acted recklessly, and the defendant engaged in conduct which created a substantial risk of death to others.[13] The statute does not define substantial risk of death. During trial, Hastings' counsel requested that the jury instructions define "substantial risk" of death as follows – "a strong possibility as contrasted with a remote or significant possibility that a certain result may occur."[14] The trial judge responded that the request "goes a bit far afield" but the judge did not have a problem

---

[8] *Id.* at A140, A146, A166–67.
[9] *Id.* at A125, A146–47, A168, A203.
[10] *Id.* at A198, A200.
[11] *Id.* at A127–28, A148–49, A214.
[12] *Id.* at A127–28, A214.
[13] 11 *Del. C.* § 604.
[14] App. to Am. Opening Br. at A193-94.

with "substantial risk means a strong possibility that something will occur."[15]

Hastings' counsel responded: "[i]f that's the Court's ruling, I would ask to leave the contrasted part in, but obviously if that's the Court's ruling, so be it."[16]

During another recess, the court asked about adding "imminent threat" to the substantial risk definition. The following exchange took place with counsel:

> THE COURT: I looked at a different definition of substantial risk and some of the words they also used were imminent threat. Does anyone want that added? I think what we have now is sufficient.
>
> [Defense:] Your Honor, I'm good with what we have.
>
> [State:] The State would like that added.
>
> THE COURT: The State would like imminent threat added, okay, so it will read: Substantial risk means . . . a strong possibility or imminent threat that a certain result may occur.
>
> [State:] That works, yes.
>
> THE COURT: Okay, all right, then we will get this going.[17]

The final jury instructions defined reckless endangering with two elements followed by an explanation:

> One, the defendant acted recklessly.
>
> And two, the defendant engaged in conduct which created a substantial risk of death to others.[18]
>
> Recklessly means that the defendant was aware of and consciously disregarded a substantial and unjustifiable risk that the death of another person would result from the conduct. The risk must be of such a nature and degree that disregard of it constituted a gross deviation from the

---

[15] *Id.* at A195.
[16] *Id.* at A193–95.
[17] *Id.* at A207–08.
[18] *Id.* at A287.

5

standard of conduct that a reasonable person would observe in the situation.

Substantial risk means a strong possibility or imminent threat that a certain result may occur.[19]

C.

Following the State's case-in-chief, Hastings moved for judgment of acquittal.[20]  Hastings argued that merely pointing a firearm at someone without discharging it was insufficient for a reckless endangering conviction.[21]  The Superior Court denied Hastings' motion, finding that a reckless endangering conviction did not require firing the gun.[22]

After the court instructed the jury, the court asked counsel whether they wanted "[a]ny tweaks or anything [they]'d like [the court] to add or take away."[23]  Defense counsel answered no.[24]  During deliberations, the jury asked the court "[w]hat constitute[d] a strong possibility or imminent threat that a certain result may occur."[25]  After consulting with counsel, the court explained to the jury: "where I have not defined a word, that word has its commonly accepted meaning."[26]

The jury convicted Hastings on both counts.[27]

---

[19] *Id.*
[20] *Id.* at A243.
[21] *Id.* at A244–45.
[22] *Id.*at A239.
[23] *Id.* at A302.
[24] *Id.*
[25] *Id.* at A305.
[26] *Id.*
[27] *Id.* at A306.

D.

After trial, Hastings moved again for judgment of acquittal.[28] Hastings argued that there was, at best, a remote possibility of accidental discharge because he did not threaten anyone, was pointing the firearm in a downward direction for about two seconds, and there were no children around the area where he left the firearm unattended.[29] The trial court found there was sufficient evidence to convict Hastings of the charges.[30] The court concluded that pointing a gun at someone was an "imminent threat" and created a "strong possibility" of death.[31] As the court held, Hastings was also the sole aggressor acting in a "powder keg" situation, "creat[ing] a potential fatal outcome."[32] And the court rejected Hastings' trivialization of the danger, finding that pointing a gun at other people was inherently deadly irrespective of the ages of others present or what he believed to be appropriate reactions to a loaded gun.[33]

II.

A.

On appeal, Hastings argues that the trial court erred when it instructed the jury that, for the reckless endangering charge, a substantial risk of death means a "strong

---

[28] *Id.* at A346.
[29] *Id.* at A347–48.
[30] *Id.* at A362.
[31] *Id.* at A368–69.
[32] *Id.* at A369.
[33] *Id.* at A371.

possibility or imminent threat that a certain result may occur."[34] He contends that we should review the issue *de novo* because Hastings' counsel objected to the instruction during trial. The State responds that Hastings did not object to the jury instructions, and therefore we should review only for plain error.

Under Superior Court Criminal Rule 30, "[n]o party may assign as error any portion of the [jury] charge or omission therefrom unless that party objects thereto before or at a time set by the court immediately after the jury retires to consider its verdict, stating distinctly the matter to which that party objects and the grounds of the objection." The purpose of the rule is to alert the trial judge to an objection and to provide the court with a chance to address the objection before the jury deliberates.[35] While counsel following good trial practice should comply with the rule by using the word "object" and explain the basis for the objection, counsel can nonetheless preserve an objection to jury instructions if it is clear from the record that counsel intended to object, explained the basis for the objection, and the trial court had a chance to rule on the objection.[36]

---

[34] Am. Opening Br. at 27.

[35] *See Jones v. United States*, 527 U.S. 373, 388 (1999) (finding the Federal Rules of Criminal Procedure 30, which has the same timeliness and specificity requirements, "enable[s] a trial court to correct any instructional mistakes before the jury retires and in that way help to avoid the burdens of an unnecessary retrial").

[36] *See Stilwell v. Parsons*, 145 A.2d 397, 401 (Del. 1958) (finding objection was preserved where "the trial judge had the [plaintiff's] point in mind and made his considered decision against the plaintiff's contention"); *Lisowski v. Bayhealth Med. Ctr., Inc.*, 2016 WL 6995365, at *2 (Del. Super. Nov. 30, 2016) (finding objection was preserved where both the court and the defendant were on sufficient notice of the plaintiff's challenge).

Here, the informality of Hastings' counsel's words – "I'm good with what we have" – lead us to conclude that counsel did not intend to object formally or to preserve an issue for appeal. Equally important, the trial court did not have an opportunity to consider a specific objection and, if warranted, take remedial action. Thus, we review for plain error. To reverse for plain error, "the error complained of must be so clearly prejudicial to substantial rights as to jeopardize the fairness and integrity of the trial process."[37] "Further, plain error is limited to material defects which are apparent on the face of the record[,] which are basic, serious and fundamental in their character, and which clearly deprive an accused of a substantial right, or which clearly show manifest injustice."[38]

## B.

It is settled that "a defendant is not entitled to a particular instruction, but he does have the unqualified right to a correct statement of the substance of the law."[39] "Although some inaccuracies may appear in the jury instructions, this Court will reverse only if such deficiency undermined the ability of the jury to intelligently perform its duty in returning a verdict."[40]

---

[37] *Lowther*, 104 A.3d at 845 (internal quotation omitted).
[38] *Id.*
[39] *Bullock v. State*, 775 A.2d 1043, 1047 (Del. 2001).
[40] *Probst v. State*, 547 A.2d 114, 119 (Del. 1988) (internal quotation omitted).

Under 11 *Del. C.* § 604, "[a] person is guilty of reckless endangering in the first degree when the person recklessly engages in conduct which creates a substantial risk of death to another person."  "'Substantial risk of death' is not defined in the Delaware Criminal Code but is accorded 'its commonly accepted meaning.'"[41]  Here, the trial court instructed the jury that "[s]ubstantial risk means a strong possibility or imminent threat that a certain result may occur."

Hastings argues that the instruction was erroneous because the words "imminent threat" have not been used to explain "substantial risk."[42]  According to Hastings, the trial court borrowed the phrase from the aggravated menacing offense or other unrelated offenses.[43]  Hastings also claims that the error was prejudicial because using "imminent threat" allowed the jury to consider the protesters' subjective interpretation of Hastings' conduct when determining whether his conduct created a substantial risk.[44]  He argues further that the jury wrestled with the definition of "substantial risk," as evidenced by their question during deliberations.[45]

---

[41] *Britt v. State*, 113 A.3d 1080 (Del. 2015) (TABLE) (citing *Eaton v. State*, 751 A.2d 878 (Del. 2000)); *see also* 11 *Del. C.* § 221 ("If a word used in th[e] Criminal Code is not defined herein, it has its commonly accepted meaning.").

[42] Am. Opening Br. at 27.

[43] *Id.* at 27–28.

[44] *Id.* at 29; Reply Br. at 13.

[45] Am. Opening Br. at 29–30.

10

Hastings' arguments have merit. One of the commonly accepted meanings of "threat" is "an expression of intention to inflict . . . injury."[46] The intention to inflict injury, either from the subjective perspective of the defendant or as perceived by the victim, is not an element of the reckless endangering offense.[47] Under reckless endangering, the question is whether Hastings acted recklessly and whether his conduct, in fact, created a substantial risk of death.[48] By including "imminent threat" in the instruction, the court muddled the distinction between a reckless endangering offense and an aggravated menacing offense, which focuses "on the victim's perception of the threat rather than on the actual risk of danger."[49]

Even though the court erred by including "imminent threat" in the reckless endangering instruction, it is not plain error. To be a plain error, it must be "so clearly prejudicial to substantial rights as to jeopardize the fairness and integrity of

---

[46] *Threat*, MERRIAM-WEBSTER (last visited Jan. 4, 2023), https://www.merriam-webster.com/dictionary/threat; *see also Threat*, BLACK'S LAW DICTIONARY (7th ed. 1999) (defining "threat" as a "communicated intent to inflict harm or loss on another").

[47] *See* Del. Governor's Comm. for Revision of the Criminal Law, DELAWARE CRIMINAL CODE WITH COMMENTARY 166 (1973) ("Note that there need be no proof . . . that the victim be put in fear."); *Minor v. State*, 605 A.2d 138, 141 (Md. 1992) (analyzing a similar reckless endangerment statute and finding "guilt under the statute does not depend upon whether the accused intended that his reckless conduct create a substantial risk of death or serious injury to another").

[48] Del. Superior Court Crim. Pattern Jury Instructions, § 11.604.

[49] *Graham v. State*, 846 A.2d 238 (Del. 2004) (TABLE) ("The bill [adopting the aggravated menacing statute] eliminated the need for the State to prove that the displayed weapon, in fact, created a substantial risk of death (an element of felony reckless endangering) . . . . [T]he focus of the aggravated menacing statute is on the victim's perception of the threat rather than on the actual risk of danger."); 11 *Del. C.* § 602(b) ("A person is guilty of aggravated menacing when by displaying what appears to be a deadly weapon that person intentionally places another person in fear of imminent physical injury.").

11

the trial process."[50]  "This means that 'it must have affected the outcome of the trial.'"[51]

In our view, it did not.  As is apparent from defense counsel's closing argument, Hastings' trial strategy was to persuade the jury that Hastings pointed the gun toward the ground, not at the protesters.[52]  Defense counsel told the jury: "If that gun doesn't appear to be pointed down and appeared to be pointed at people then find him guilty.  But if it's pointed down and the barrel is down . . . then you got to find him not guilty."[53]  Hastings' other arguments at trial buttressed his claim that the gun was pointed down.  He attempted to discredit the protesters' version of the events,[54] emphasized that the protesters never ran or ducked, and therefore did not really believe that the gun was pointed at them.[55]  The State countered by arguing during closing that the video and photographic evidence showed Hastings pointing the gun at the protesters.[56]

---

[50] *Lowther*, 104 A.3d at 845 (internal quotation omitted).

[51] *Buckham v. State*, 185 A.3d 1, 19–20 (Del. 2018) (quoting *Morgan v. State*, 962 A.2d 248, 254 (Del. 2008)).

[52] App. to Am. Opening Br. at A267, A270, A271.

[53] *Id.* at A270.

[54] *Id.* at A265.

[55] *Id.* at A121, A134, A158, A223; *id.* at A271 ("And you guys can decide whether or not if a gun is pointed you, you really believe a gun is pointed at you as opposed to just somebody taking it out and showing it to somebody, what is your reaction, just stand there and start cussing the guy or do you duck, do you run, do you hide.  They didn't do any of that.") (Defense's Closing Argument).

[56] *Id.* at A256, A257, A258, A260, A273.

Whether Hastings posed a threat or Hastings intended to inflict harm did not play much of a role, if any, at trial. Hastings' counsel repeatedly argued to the jury that he did not threaten the protesters.[57] The State did not argue that Hastings posed an "imminent threat" to the protestors.[58] The State also told the jury that the case "[wa]sn't about what the defendant intended to do."[59] We conclude that it is unlikely that the "imminent threat" portion of the instruction prejudiced the defendant or affected the outcome of the trial when the State and defense counsel made the direction of the gun-pointing the dispositive issue at trial.

## III.

Hastings also claims that the trial court erred when it denied his motion for judgment of acquittal. He argues that he did not discharge or waive the gun and did not put his finger on the trigger.[60] According to Hastings, merely pointing a gun is insufficient to convict him of reckless endangering.[61] He also claims that the General Assembly did not intend that the reckless endangering statute encompass the mere display of weapons.[62] When reviewing sufficiency of the evidence claims on appeal, this Court must decide whether any rational trier of fact, viewing the

---

[57] *Id.* at A264, A267, A271–72.
[58] *Id.* at A255-61, A273–74.
[59] *Id.* at A258.
[60] Am. Opening Br. at 36.
[61] *Id.*
[62] *Id.* at 35.

13

evidence in the light most favorable to the prosecution, could find the essential elements of the charged offense beyond a reasonable doubt.[63]

After our independent review of the record viewed in a light most favorable to the State, we conclude that the evidence at trial was legally sufficient to support Hastings' convictions beyond a reasonable doubt. First, we find unpersuasive Hastings' argument that the General Assembly did not intend to include the mere display of a weapon under the reckless endangering statute. Hastings did more than display his weapon. He pointed it at the protesters. The legislative history of the reckless endangering statute reveals that the General Assembly intended the offense to cover conduct such as pointing firearms at people. The reckless endangering offense was first enacted into law in 1972.[64] The drafters of the 1972 Criminal Code explained that "there were several statutory crimes in the former Title 11 which would constitute reckless endangering," and listed "pointing a firearm" as one of them.[65]

---

[63] *Lowther*, 104 A.3d at 843.

[64] 11 *Del. C.* §§ 603, 604 (1972); Del. Governor's Comm. for Revision of the Criminal Law, DELAWARE CRIMINAL CODE WITH COMMENTARY 166 (1973).

[65] *Id.* at 166. The drafters discussed the former Delaware law under Section 603, which is reckless endangering in the second degree, and then referred to this discussion under Section 604. *Id.* at 167. The only difference between reckless endangering in the first and second degree is the magnitude of the risk of harm, i.e., "substantial risk of death" or "substantial risk of physical injury." 11 *Del. C.* §§ 603, 604. Thus, depending on circumstances, pointing a gun can create a substantial risk of both physical injury and death, especially when the gun is loaded and ready-to-fire and is aimed directly at people.

Second, Hastings relies on the statutory definition of "deadly force" under the justification defense.[66] There, "deadly force" does not include "[a] threat to cause death or serious bodily harm, *by the production of a weapon or otherwise*, so long as the defendant's purpose is limited to creating an apprehension that deadly force will be used if necessary."[67] This definition, however, is only relevant to a justification defense when a defendant argues that the use of "deadly force" is justified. It has no bearing on the legislative intent behind the reckless endangering offense.

Finally, there was sufficient evidence for the jury to find that Hastings' handling of the gun was reckless and that he created a substantial risk of death for people around him and across the street. What transpired at the political rally was captured by videos and photographs introduced at trial. The evidence shows that Hastings unholstered his loaded gun multiple times and pointed the weapon at the agitated protesters in a tense political event where the supporters and the protesters jeered and yelled at each other. The gun did not need to be "racked" to fire, meaning there was an elevated risk of discharge, even if accidental. Hastings also left the loaded gun on the ground with other people nearby, some of whom he might have

---

[66] Am. Opening Br. at 35.
[67] 11 *Del. C.* § 471 (emphasis added).

15

just met.[68]  Anyone could pick up the gun, regardless of whether they had any gun handling experience or training.  We have reviewed the videos and photographs of the incident and have no doubt that the jury's verdict was supported by the evidence.[69]

## IV.

We affirm the judgment of the Superior Court.

---

[68] App. to Am. Opening Br. at A217 ("[Hastings] was discussing the weapon with another person whom he did not know at the time.") (Officer Larney's Testimony).

[69] Hastings also argues that allowing his convictions to stand would pose an undue burden on his right to bear arms.  Am. Opening Br. at 37-38.  The argument was not raised below and was not argued as plain error on appeal.  In any event, this case was not about Hastings open carrying his gun but his reckless handling and pointing of the weapon.  *Id.* at A84 (State's Opening Statement); *id.* at A123 (Trumbull's Testimony); *id.* at A180 (Diaz's Testimony); *id.* at A257 (State's Closing Argument).